IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK CURRY,

       Plaintiff,

v.

CONNECTION CHEMICAL LP,

       Defendant.

No.

JURY TRIAL DEMANDED

### COMPLAINT

Plaintiff Patrick Curry files the following Complaint against Defendant Connection Chemical LP, and in support thereof alleges as follows:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* This Court has supplemental jurisdiction over Plaintiff's Pennsylvania Minimum Wage Act ("PMWA") claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred within this District and Defendant conducts ongoing business operations within this District.

### Parties

3. Plaintiff Patrick Curry ("Curry") is an adult individual who resides at 24 Seedling Drive, Southampton, PA 18966.

4. Defendant Connection Chemical LP ("Connection Chemical") is a limited partnership with a principal place of business at 104 Pheasant Run, Suite 104, Newtown, PA 18940.

5.      On or about November 5, 2024, Shrieve Chemical Company, LP ("Shrieve") acquired Connection Chemical.  Following the acquisition, Connection Chemical continues to operate under its existing name as a subsidiary of Shrieve.

**Factual Background**

***Curry's Employment with Connection Chemical***

6.      Curry was employed by Connection Chemical from December 1, 2018 until his termination on May 21, 2026, a period of over 7 years.

7.      Curry was initially hired as a customer service representative. In approximately 2021 or 2022, Curry was transferred to the Logistics Department, where he worked until the date of his termination.

8.      Throughout his tenure in the Logistics Department, Curry performed hands-on logistics work, including processing and tracking freight orders, coordinating with carriers on scheduled pickups and deliveries, and providing shipment status updates to the customer service department.

9.      Curry performed this work under the direct supervision of Michael Barron, Senior Logistics Coordinator.

10.      Curry was never assigned an official job title.  On multiple occasions when Curry requested a title from management, he was told only that they were "working on it."

11.      Curry was paid semi-monthly, on the 15th and last day of each month. Curry's pay stubs reflect a regular hourly rate of $30.26 and 86.67 hours per semi-monthly pay period, consistent with a full-time schedule paid at an annualized rate derived from that hourly equivalent.

12. Curry and other employees regularly worked more than 40 hours per week to meet required workloads, with management's full knowledge.

13. Throughout Curry's employment, Curry routinely worked in excess of 40 hours per week, averaging approximately 45 to 50 hours per week.

14. Curry never received overtime compensation for any hours that he worked beyond 40 in a workweek.

15. Prior to Shrieve's acquisition of Connection Chemical in November 2024, employee work hours were tracked using a software application called TimeClick.

16. Following the acquisition, Connection Chemical transitioned to a different application called 8x8, which did not track hours worked.

17. TimeClick records for the period preceding the transition remain in Defendant's possession.

18. When Curry was transferred to the Logistics Department, the Company's CFO told him that a pay increase was not possible at that time but promised to "circle back" on the issue.

19. Despite Curry's repeated follow-ups, no meaningful pay increase was ever provided.

20. Connection Chemical also failed to pay Curry overtime compensation despite classifying him as "salaried, non-exempt."

### *Curry's FLSA Inquiry and Connection Chemical's Response*

21. In early 2026, Curry researched his rights under the FLSA regarding his employment classification.

22.     On February 25, 2026, Curry sent a written inquiry to Amber Kernan, Connection Chemical's Controller, asking for written confirmation of his FLSA employment classification.

23.     Kernan declined to respond in writing and instead demanded a telephone call, during which she confirmed that Curry's classification was "salaried, non-exempt."

24.     The February 25, 2026 inquiry constituted protected activity under the FLSA, as it was sufficiently clear and detailed for a reasonable employer to understand that Curry was asserting statutory FLSA rights.

25.     As a "salaried, non-exempt" employee Connection Chemical was required to pay Curry overtime pay at one and one-half times his regular rate for all hours worked in excess of 40 per workweek.

26.     The next day, Barron imposed a new restriction on Curry, prohibiting him from working more than 8 hours per day without prior management approval. At the same time, Barron implemented a mandatory 2-hour action window for responding to emails.

27.     When Curry sought documentation of the policy underlying the 8-hour and 2-hour rules in writing, Barron discouraged him from doing so.

28.     On April 24, 2026, in an email to Coretta Brown, Shrieve HR Business Partner, Curry stated that Connection Chemical did not impose the 8-hours-per-day restriction or the 2-hour email window on other employees who were regularly working and communicating outside standard business hours.

29.     In the April 24, 2026 written communication to Brown, Curry expressly referenced his FLSA classification, the Company's obligation to pay overtime, and his concern that the restrictions imposed on him following his February 25 inquiry were retaliatory in nature.

4

30.     Curry's April 24, 2026 communication constitutes protected activity under the FLSA.

### *The Termination of Curry's Employment*

31.     On May 21, 2026, less than 3 months after Curry's initial protected FLSA inquiry, Barron notified Curry by telephone that his employment was terminated.

32.     Barron told Curry that the termination was for "operational efficiencies" and then Barron immediately turned the call over to Brown, who proceeded to discuss a proposed separation agreement.

### *Defendant's Replacement of Curry*

33.     Shortly after Curry's termination, Connection Chemical sought to fill his former position.

34.     In or around June 2026, a recruiter contacted Curry to evaluate him for his former position at Connection Chemical. Upon Curry's inquiry, the recruiter confirmed that the open role was with Connection Chemical and matched the description of Curry's former position.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT - UNPAID OVERTIME
### 29 U.S.C. §§ 207(a)(1) and 216(b)

35.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

36.     At all times relevant hereto, Connection Chemical was an "employer" within the meaning of the FLSA.  29 U.S.C. § 203(d).

37.     At all times relevant hereto, Curry was an "employee" within the meaning of the FLSA.  29 U.S.C. § 203(e).

38.     In performing his work duties, Curry is legally entitled to overtime pay as his work duties are non-exempt.

39.     The FLSA requires employers to pay non-exempt employees overtime compensation at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.  29 U.S.C. § 207(a)(1).

40.     Connection Chemical internally classified Curry as "salaried, non-exempt," a designation that explicitly acknowledged his entitlement to overtime compensation. This classification constitutes an implicit concession that no overtime exemption applies.

41.     Throughout the period covered by the applicable statute of limitations, Curry routinely worked in excess of 40 hours per workweek, averaging approximately 45 to 50 hours per week, but was never paid overtime compensation for any of those hours.

42.     Connection Chemical internally classified Curry as non-exempt, yet it never paid him overtime despite his consistent overtime hours.

43.     Connection Chemical's violation of the FLSA was willful.

44.     Connection Chemical "knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the FLSA," triggering the 3-year statute of limitations. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

WHEREFORE, Plaintiff Patrick Curry requests that this Court enter judgment in his favor and against Defendant Connection Chemical LP, and award Plaintiff all damages available under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., in the form of all unpaid overtime compensation and monetary losses, including liquidated damages as defined by the Fair Labor Standards Act, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the Court deems appropriate.

## COUNT II

## VIOLATION OF THE FAIR LABOR STANDARDS ACT - RETALIATION

### 29 U.S.C. §§ 215(a)(3) and 216(b)

45.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

46.     Section 15(a)(3) of the FLSA makes it unlawful for any employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act."  29 U.S.C. § 215(a)(3).

47.     The FLSA's anti-retaliation provision is remedial in nature and must be broadly construed.  *See Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022).

48.     Curry engaged in protected activity under the FLSA on at least two occasions: (a) his written inquiry to Kernan on February 25, 2026 asking for confirmation of his FLSA classification and asserting his right to overtime compensation; and (b) his written communication to Brown on April 24, 2026 expressly referencing his FLSA classification, the Company's obligation to pay overtime, and his concern about retaliation.

49.     Both communications were "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 8 (2011).

50.     Defendant subjected Curry to adverse employment actions, including: (a) the unilateral imposition of an 8-hours-per-day work restriction effective the day after his February 25, 2026 FLSA inquiry; (b) the implementation of a 2-hour email response window applied selectively to Curry; and (c) the termination of Curry's employment on May 21, 2026.

7

51.    A causal connection exists between Curry's protected activity and the adverse actions taken against him.

52.    The fact that Defendant moved to fill Curry's position demonstrates that his termination was not the result of a legitimate operational restructuring, but was instead pretextual.

53.    As a direct and proximate result of Defendant's unlawful retaliation, Curry has sustained and continues to sustain damages, including loss of wages and benefits, loss of future earning capacity, and other economic and non-economic harm.

WHEREFORE, Plaintiff Patrick Curry requests that this Court enter judgment in his favor and against Defendant Connection Chemical LP, and award Plaintiff all damages available under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., in the form of all compensation and monetary losses which he has been denied, including back pay, front pay, pre-judgment interest, liquidated damages as defined by the Fair Labor Standards Act, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the Court deems appropriate.

## COUNT III

### VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT - UNPAID OVERTIME

### 43 P.S. §§ 333.104(c) and 333.113

54.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

55.    The PMWA requires employers to pay non-exempt employees overtime compensation at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.  43 P.S. § 333.104(c).

8

56.     At all times relevant hereto, Connection Chemical was an "employer" within the meaning of the PMWA.  43 P.S. § 333.103(g).

57.     At all times relevant hereto, Curry was an "employee" within the meaning of the PMWA.  43 P.S. § 333.103(h).

58.     Defendant's conduct, as described in the preceding paragraphs, constitutes a violation of the PMWA in that Defendant failed and refused to pay Curry overtime compensation for hours worked in excess of 40 per workweek, despite his classification as a non-exempt employee.

59.     As a direct and proximate result of Defendant's violations of the PMWA, Curry has sustained damages in the form of unpaid overtime compensation and is entitled to all remedies available under the PMWA.

WHEREFORE, Plaintiff Patrick Curry requests that this Court enter judgment in his favor and against Defendant Connection Chemical LP, and award Plaintiff all damages available under the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101 et seq., in the form of all unpaid overtime compensation and monetary losses, including liquidated damages as defined by the Pennsylvania Minimum Wage Act, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the Court deems appropriate.

## COUNT IV

**VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT- RETALIATION**

**43 P.S. § 333.112**

60.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

61.     The PMWA prohibits retaliation against any employee because such employee has filed a complaint or exercised any right afforded under the Act.  43 P.S. § 333.112.

9

62.     As described in the preceding paragraphs, Curry engaged in protected activity by asserting his rights to overtime compensation under the PMWA, and Defendant retaliated against him by imposing adverse employment conditions and ultimately terminating his employment.

63.     As a direct and proximate result of Defendant's unlawful retaliation in violation of the PMWA, Curry has sustained and continues to sustain damages, including lost wages, benefits, and other economic and non-economic harm, and is entitled to all available remedies under the PMWA.

WHEREFORE, Plaintiff Patrick Curry requests that this Court enter judgment in his favor and against Defendant Connection Chemical LP, and award Plaintiff all damages available under the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101 et seq., in the form of all compensation and monetary losses which he has been denied, including back pay, front pay, pre-judgment interest, liquidated damages as defined by the Pennsylvania Minimum Wage Act, reasonable attorneys' fees, expert witness fees, costs, and any other relief which the Court deems appropriate.

/S/ Andrew S. Abramson, Esq.

_____

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Patrick Curry

Dated: June 30, 2026

10